## UNITED STATES *v.* CONE & Co. (No. 2022).[1]

1. CONSTRUCTION, PARAGRAPH I, SECTION III, TARIFF ACT OF 1913.

While the additional duties prescribed for undervaluation of merchandise by paragraph I, Section III, tariff act of 1913, are not to be construed as penal in character, nevertheless they provide for the assessment of duties in excess of the ordinary or regular rate of duty upon similar merchandise, and they should not accrue against an importer unless the statutes and regulations upon which they depend have been substantially followed in the assessment.

2. CONSTRUCTION, ARTICLE 582, CUSTOMS REGULATIONS OF 1915.

The Customs Regulations, when established in conformity with the tariff act are intended to secure the rights of importers as well as to enforce their obligations. Article 582, Customs Regulations of 1915, requiring that when the appraiser advances invoice prices to make market value an appropriate red ink notation shall be made on the invoice, must be substantially complied with. The collector has no authority to condone noncompliance with this regulation; nor is it a rule established for the sole benefit of the Government, so that the importer has no right to complain of its violation. A red ink notation "D" opposite an item deducted by the importer as nondutiable, the notation being intended by the appraiser and understood by the collector to mean that the item should be added again to make market value, is not a sufficient compliance with this regulation, and the decision of the Board of United States General Appraisers sustaining a protest against the collector's action in assessing upon such a foundation the additional duty provided for by paragraph I, Section III, tariff act of 1913, for undervaluation is affirmed.

### United States Court of Customs Appeals, April 10, 1920.

APPEAL from Board of United States General Appraisers, Abstract 43466.

[Affirmed].

*Bert Hansen,* Assistant Attorney General (*John J. Mulvaney,* special attorney, of counsel). for the United States.

Submitted on record by appellees.

---

[1] T. D. 38375 (38 Treas. Dec., 333).

[Oral argument Apr. 6, 1920, by Mr. Hansen.]

Before MONTGOMERY, SMITH, BARBER, DE VRIES, and MARTIN, Judges.

MARTIN, Judge, delivered the opinion of the court:

The merchandise in this case consisted of three bales of goatskins,. which were shipped from China to the importers as consignees.

The importers made entry of the merchandise for consumption,. stating its dutiable value to be 1,614 taels less 332.94 taels, being. 1,281.06 taels. The deduction of 332.94 taels was designated by the initials N.. D. C., which are said to signify nondutiable charges.

The entry was duly accompanied by a consular invoice, containing a statement of the merchandise and its value, the items of which may be summarized as follows:

|  | Taels. |
|---|---|
| Merchandise (classified for duty at 10 per cent, paragraph 348) | 1, 259. 68 |
| Charges for packing, etc | 21. 38 |
| Shipping charges, including export duty, consular fee, transportation, and insurance | 284. 55 |
| Commission | 48. 39 |
| C. i. f | 1, 614. 00 |

An inspection and comparison of these papers make it plain that the importers were declaring the dutiable value of the merchandise to be the total invoice price of 1,614 taels less the last two items. thereof, namely, shipping charges, etc., 284.55, and commission, 48.39, the two deductions aggregating 332.94 taels, making a net. dutiable valuation of 1,281.06 taels, as stated in the entry. The present controversy is concerned with the item of commission only; that is, commission, 48.39 taels. This item, it may be repeated, had been deducted in the entry as a nondutiable charge or item from the gross invoice price of the merchandise in the process of declaring its. dutiable valuation.

When the appraiser came to perform his official duty in respect to the entry, he wrote a letter D in red ink upon the invoice, opposite to the item of "commission 48.39 taels." He made no other notation upon either the invoice or entry, affecting the present question. The letter D thus indorsed upon the invoice is of course the initial letter of the word "dutiable," and the collector accepted the indorsement as an official report of the appraiser to the effect that he had advanced the invoice value in the amount of the commission, to wit, 48.39 taels, in order to cover the true dutiable value of the merchandise, or in other words "to make market value." This conclusion of the collector rested entirely upon his interpretation of the letter D which the appraiser had written opposite the item in question upon the invoice, there having been no other report filed by the appraiser of his official action, nor any other indorsement to this effect made by him upon either of the papers in question.

The collector thereupon assessed the merchandise with appropriate ad valorem duty, and also with the so-called "additional duties" prescribed by paragraph I, Section III, of the tariff act of 1913, and notified the importers to that effect. The importers upon receiving this notice abandoned the merchandise to the Government, under paragraph X, Section IV, of the act, claiming that thereby they ceased to be liable for the payment of any duty upon the importation. The collector accepted the abandonment as a release of the importers from their obligation to pay the ordinary or regular duty upon the merchandise, but denied that they were released thereby from the payment of the "additional duties" which had been levied against them. These additional duties were therefore demanded and collected from the importers by the collector, notwithstanding the abandonment. The following is a copy of part of paragraph I, supra, relating to additional duties:

Such additional duties shall not be construed to be penal, and shall not be remitted nor payment thereof in any way avoided except in cases arising from a manifest clerical error, nor shall they be refunded in case of exportation of the merchandise, or on any other account, nor shall they be subject to the benefit of drawback.

The importers filed a protest against the decision of the collector. This was submitted to the Board of General Appraisers, and was sustained. The Government appeals from that decision.

The protest contains several objections which are urged by the importers against the collection of the additional duties. Only one of these will be considered in this opinion, and that is the one which challenges the efficacy of the appraiser's indorsement of the letter D upon the invoice, to serve as an official report of the fact that he had advanced the invoice value in the amount of the commission aforesaid in order "to make market value."

In the Customs Regulations of 1915, article 582, the following rules are prescribed for the appraiser's action under such circumstances:

When invoice prices are advanced to make market value, there should be written or stamped, in red ink, over or opposite each item advanced, the words "Appraiser adds to make market value," with the amount of the advance per unit in the currency of the invoice.

When items, such as commissions, discounts, or charges, are deducted on entry so that the entered value of the merchandise per se is below the market value, the appraiser should make the advance by noting "Appraiser adds to make market value," and state the amount added.

It thus appears that if the appraiser intended to signify that the item of commission in question should be reinstated in the net invoice value of the merchandise in order to make market value, it was his duty according to the controlling regulations to indorse, "Appraiser adds to make market value," stating the amount added, upon the invoice. It is doubtless true that a literal adherence to this form is not essential, but on the other hand it can not wholly be

ignored by the appraiser. It will certainly be conceded, for example, that it would not be sufficient for the appraiser to make merely an oral report to the collector of his action, nor for him to forward to the collector a notice written as part of any entirely separate instrument. Nor could the appraiser adopt a purely arbitrary symbol, such as a cross or an asterisk. Nor would the collector be authorized in such a case to condone the irregularity. It is apparent upon consideration that the rule prescribed by the regulations must be substantially followed by the appraiser. Nor is this a rule established solely for the benefit of the Government, and one which the Government alone may insist upon. On the contrary, the Customs Regulations when established in conformity with the act are intended to secure the rights of importers as well as to enforce their obligations.

In the present instance, it may be repeated, the collector has collected so-called additional duties from the importers. These are authorized only in case the appraiser has officially appraised the merchandise and has advanced the entered value thereof in a given sum in order to express its true dutiable market value. The Customs Regulations have prescribed the mode whereby the appraiser shall enter such an advancement upon the invoice or entry, for the information alike of the collector and the importers. Instead however of obeying these regulations the appraiser has simply indited a symbol upon the invoice, and proposes that this shall serve as a substitute for the entry which the regulations require. We think that it can not be accepted as such, even though the collector may have understood the symbol in the sense intended by the appraiser; and consequently the appraiser virtually has failed to make a report of his official action. There was therefore no foundation for the assessment of additional duties in the case.

It may be noted also that whereas the additional duties prescribed by paragraph I, supra, are not to be construed as penal in character, nevertheless they provide for the assessment of duties in excess of the ordinary or regular rate of duty upon similar merchandise, and they should not accrue against an importer unless the statutes and regulations upon which they depend have been substantially followed in the assessment. This has not been done in this case.

A number of decisions have been cited by counsel, and these have been examined, but they do not contravene this decision in so far as the single narrow issue decided herein is concerned.

The decision of the board is therefore *affirmed.*

### CONCURRING OPINION.

BARBER, Judge: I doubt if the quoted customs regulation was made for the protection of an importer or if the failure to follow it can be the foundation of relief in this case.

My concurrence is based upon the ground that giving to the notation, or whatever it may be called, of the appraiser upon the invoice the effect of notice to the collector that the appraiser was of the opinion that the commission was dutiable, it does not justify the collector in construing it to mean that thereby the appraiser in fact advanced the entered value a corresponding amount.

The function of advancing the entered value of merchandise exclusively appertains to the appraiser. What in fact he did as I view it is to be determined by the construction to be placed on the instrument (invoice) itself. He may have intended to advance the entered value, but he did not. He may have designed merely to call the matter to the attention of the collector, as he had a right to do, leaving to that officer such action concerning it as he was clothed with power to take.

The question here is one of fact only—that is, Did the appraiser advance the entered value? The collector, as he states in his report, inferred that the appraiser so intended, while I think that inference is not warranted, especially when the result, if the other contentions of the Government be sustained, is to take from the importers money under the guise of taxation. It has often been said by the courts in substance that this will not be done upon a strained interpretation of a statute. Neither in my opinion should it be done upon a similar interpretation of a written instrument.