JAMES LOUDON & CO. FOR WM. H. FLOYD & CO. v. UNITED STATES

No. 5731.—Invoice dated Malaga, Spain, April 27, 1939.
Certified May 4, 1939.
Entered at Los Angeles, Calif., July 11, 1939.
Entry No. 1522.

Second Division, Appellate Term

(Decided October 14, 1942)

*Harper & Harper* (*Abraham Gottfried* of counsel) for the appellants.
*Paul P. Rao*, Assistant Attorney General (*Daniel I. Auster*, special attorney), for the appellee.

Before TILSON, KINCHELOE, and DALLINGER, Judges

TILSON, Judge: This case is before us by reason of an application having been filed for a review of the decision of the trial court under the provisions of section 501 of the act of 1930. Before the trial court three appeals to reappraisement were involved, but an application for review was filed only as to reappraisement 135947–A. Therefore, we are here concerned with the decision of the trial court only as to one appeal.

The following is quoted from the decision of the trial court:

A different situation is encountered in connection with Reappraisement 135947–A. On the invoice covered by that appeal the following was noted in red ink by the *examiner*:

Appr'd Value of Drums Ptas 21.25 Net Each.
Ex. V.

and although there is a check mark in the "Appraised" column of the summary sheet, indicating appraisement as entered, we are satisfied that the statement made

on the face of the invoice by the appraising officer controls over the marks on the summary sheet in the event of conflict between the two. [Italics ours.]

\* \* \* \* \* . \* \*

As to Reappraisement 135947–A the record shows that the drums were appraised on the basis of export value at 21.25 Spanish Pesetas each, net, and as the plaintiffs have failed to offer any evidence tending to establish a value therefor other than that adopted by the appraiser, I find that export value, as that value is defined in Section 402 (d) of the Tariff Act of 1930 is the proper basis of value for the drums in question, and that such value at the time of exportation was the appraised value.

We are in accord with the finding of the trial court that export value is the proper basis of value and that such value at the time of exportation was the appraised value, but for the reasons hereinafter stated we are not in agreement with the finding of the trial court that the drums were appraised at 21.25 Spanish pesetas each, net. It should be remembered that the red-ink notations on the invoice were found by the trial court to have been placed there by the *examiner*. Counsel for appellee makes no contention that this finding by the trial court was in error or that it was not supported by the evidence.

It might be observed in passing that the summary sheet shows the invoice value of the merchandise, which includes both the olive oil and the drums, to be £526 15s. 2d. and the net entered value to be £526 15s. 2d., which would also include both the oil and the drums, whereas the entry shows "50 drums Olive Oil" at a value of £507 17s. 2d. and "Iron drums 50 pcs" at a value of £18 18s. 0d. Any discrepancy between the entered value and the value shown on the summary sheet, furnished by the collector to the appraiser, or any lack of sufficient information contained in the summary sheet, is a matter with which we are not here concerned, but is for the consideration of those two officials.

The distinction between the duties of an appraiser of merchandise and an examiner of merchandise has long been recognized. Section 500 (a) of the act of 1930 provides, among other things, that it shall be the duty of the *appraiser:*

. (1) To appraise the merchandise in the unit of quantity in which the merchandise is usually bought and sold by ascertaining or estimating the value thereof by all reasonable ways and means in his power, any statement of cost or cost of production in any invoice, affidavit, declaration, or other document to the contrary notwithstanding;

\* \* \* \* \* \* \*

(5) To report his decisions to the collector.

Section 401 (j) of the act of 1930 declares that:

The word "appraiser" means appraiser of merchandise and includes chief assistant appraiser and any person authorized by law or by regulations of the Secretary of the Treasury to perform the duties of an appraiser, \* \* \*.

By act of March 3, 1905, 33 Statutes at Large 983, the Congress very clearly expressed its view as to the person it considered capable and competent to appraise merchandise, as follows:

Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled, *That in the case of a vacancy* occurring, by reason of death or otherwise, in the office of appraiser or assistant appraiser of merchandise *in any customs collection district* the Secretary of the Treasury may designate some officer or employee within the district to perform the duties of the office, without additional compensation, until the vacancy shall have been filled.

Sec. 2. That in case of the sickness, disability, or occasional and necessary absence from his office of an appraiser of merchandise in any customs collection district it shall be lawful for the appraiser to nominate, and the Secretary of the Treasury to confirm, an assistant appraiser or other officer of the customs in the same customs collection district, who shall perform the functions of the appraiser, without additional compensation, during such absence: *Provided, That in no case shall any person enter upon or discharge the duties of the appraiser or assistant appraiser of merchandise until he shall have taken the oath required by law of such officer.* [Italics ours except the word "Provided."]

Paragraph (c) of article 1384 of the Customs Regulations of 1937 also provides that:

No person shall enter upon or discharge the duties of appraiser until he shall have taken the oath required by law for such office.

Apparently as supporting or authorizing this regulation, there is cited the act of March 3, 1905, above quoted.

As to examiners of merchandise, section 500 (e) of the act of 1930, provides that:

It shall be the duty of an examiner to examine and inspect the merchandise and report the value and such other facts as the appraiser may require in his appraisement or report, and to perform such other duties as may be prescribed by rules and regulations of the Secretary of the Treasury or the appraiser.

With reference to the distinction between the duties and powers of an appraiser and an examiner, this court, speaking through Judge McClelland, in *Lunham & Moore* v. *United States*, Abstract 45342 (old series), said:

*The most that may be said of the action of the examiner, who is the appraiser's subordinate, is that it is advisory. He operates simply as an aid to the appraiser. He cannot make a final appraisement unless he is specially designated so to do at a port where there is no appraiser. His action therefore, being merely advisory,* there is no reason why his judgment might not be changed at any time between his first examination of the merchandise and the actual return of the appraiser. [Italics ours.]

As heretofore stated and as found by the trial court, the invoice in this case bears the notation in red ink: "Appr'd. Value of Drums Ptas. 21.25 Net Each. Ex. V." This, as found by the trial court, was placed there by the examiner of merchandise, and so far as this record shows the appraiser of merchandise never even saw this nota-

tion of the examiner on the invoice, although we are not assuming that the appraiser did not observe this notation. There is, however, no indication on the invoice of any action thereon by the appraiser.

However, on Form No. 6417, "Summary of entered value, examination, and appraisement" we find the following:

July 14, 1939. The examination and appraisement of the merchandise covered by this invoice has been made in accordance with the law, and the facts as found are as set forth below.

(A check mark (√) indicates that appraisement, classification, or quantities are as entered or that packing charges are believed to be correct.)

Immediately following the above appears "Marks" bearing a red-ink check mark; "Number" bearing a red-ink check mark; "Examiner and date of examination" bearing the initials in red ink "L. M. A." and by means of a rubber stamp "Jul 12 1939"; "Appraised" bearing a red-ink check mark; "Advisorily classified" bearing a red-ink check mark; "Quantities" under which appears "per weigher's return"; "Dutiable packing charges" bearing a red-ink check mark and "Remarks" which bears no notation. Immediately following the above appears in red ink the signature of "M. M. Mullin, Appraiser."

So far as this record shows the above action of the appraiser as shown on the "Summary Sheet" is the only action taken by the appraiser and constitutes his appraisement of the merchandise in this case. Although the trial court referred to the "statement made on the face of the invoice by the appraising officer" the trial court also specifically found that the notation of value appearing on the invoice was placed there by the examiner and not by the appraiser.

Under the authorities hereinbefore cited and quoted the action of the examiner of merchandise in placing the notation as to value upon the invoice cannot be considered as an appraisement of the merchandise. To hold that the examiner by placing a notation as to value upon the face of the invoice could thereby preclude the appraiser from making an appraisement different therefrom, or that such action by the examiner must be considered an appraisement of the merchandise, irrespective of any action by the appraiser himself, would be to make the examiner the appraiser, and thereby make of no effect any action by the appraiser. To this we cannot subscribe.

The drums in question were entered at £18 18s. 0d. and the action of the appraiser, and the only action shown by this record to have been taken by the appraiser, in approving the entered value must be considered the appraisement of the merchandise. The action of the appraiser in approving the entered value is clearly contrary to the notation on the invoice made by the examiner. Yet we are asked to assume that this action by the appraiser in finding a value different from that reported by the examiner constitutes an adoption by the appraiser of the value suggested by his subordinate, the examiner.

As well stated by Judge McClelland: "The most·that may be said of the action of the examiner, who is the appraiser's subordinate, is that it is advisory. He operates simply as an aid to the appraiser. He cannot make a final appraisement unless he is specifically designated so to do at a port where there is no appraiser."

If it were shown by this record that the red-ink notations on the invoice as to value were placed there by the appraiser then we would be in accord with the holding of the trial court that the statement made on the face of the invoice by the appraising officer controls over the marks on the summary sheet, since there would be a clear conflict between the, two, but, as found by the trial court, the notations on the invoice were placed there by the examiner. Since the examiner of merchandise is not an appraising officer, and the appraiser not having placed any notations on the invoice, it is apparent there can be no conflict between the appraisement of the appraiser on the summary sheet and the notations of an appraising officer on the invoice. There are no notations of an appraising officer on the invoice. Even if it were conceded that the examiner was an appraising officer he is subordinate to the appraiser and any action he might have taken on the invoice would only be advisory, which in this case the appraiser refused to accept and follow. In this connection the following is quoted from the brief of appellant:

* * *. Since the appraiser's notation on the Summary Sheet shows that he appraised the merchandise as entered, this was tantamount to a rejection of the examiner's action as represented by the examiner's notations on the invoice.

The foregoing statement is obvious since the appraiser would certainly not note on the Summary Sheet that the merchandise was appraised as entered when, as a matter of fact, he intended to adopt the examiner's suggested advance in value. The only reasonable conclusion that can be drawn is that the appraiser did not approve the examiner's action.

Even if the appraiser was negligent in failing to observe the examiner's action, the appraisement would still be as entered, since the examiner's action is in no way controlling of the actual appraisement. The appraiser is the only one who can make the appraisement.

Counsel for appellee herein argues in effect that since appellant did not offer any evidence as to the actual value of the drums in question he is not entitled to a judgment in his favor, and the appeal should be dismissed. Such argument overlooks the fact that appellant has a value found by the appraiser with which he is satisfied, and that but for the fact that the collector sent a notice of advance this appeal would not have been filed. In this connection it should be remembered that the appellant entered the drums at £18 18s. 0d. and that the appraiser found a value for the drums of £18 18s. 0d. Certainly under such circumstances there was no reason for the collector to send notice of an advance in value, for as a matter of fact there had been no advance in value.

When the official papers are returned to the collector after an examination and appraisement of the merchandise in the office of the appraiser. the collector in selecting the value upon which he will assess duty is not at liberty to look to the action of the examiner and also to the action of the appraiser and adopt the value reported by the examiner to the appraiser in case he finds that to be higher than the actual appraised value. The only value upon which the collector can base his assessment of duties is the final appraised value and that value is the value found by the appraiser, and is not the value reported by the examiner to the appraiser which the appraiser by positive action failed and refused to accept and adopt as the appraised value.

Support for the above holding is found in the case of *Ringk & Co.* v. *United States*, 12 Ct. Cust. Appls. 40, wherein our appellate court observed:

When the goods were entered it became the duty of the appraiser to appraise them at their true value, and he was not bound by the statements of either the invoice or entry. *He performed that duty by approving the entered value,* and if the collector was dissatisfied therewith he was entitled to appeal to reappraisement. When the time allowed for such an appeal had passed the appraisement became final, and the collector was bound to liquidate accordingly. [Italics ours.]

If, as held in the *Ringk* case, *supra*, the approval by the appraiser of the entered value became the final appraised value, then by the same reasoning the approval of the appraiser in this case of the entered value became the final appraised value, and the collector was bound to liquidate accordingly. If the collector were not satisfied with the final appraised value of the drums in this case, he was entitled to appeal to reappraisement, but when the time allowed for such an appeal had passed the appraisement became final and the collector was bound to liquidate accordingly. The fact that the collector mistook his remedy by taking the return of value made by the examiner to the appraiser, and sent a notice of advance in value, rather than accepting the appraised value and filing an appeal to reappraisement, cannot serve to place upon the importer the onus of establishing at the trial that the proper dutiable value of the drums was the entered and appraised value.

In the case of *United States* v. *Stegemann*, 12 Ct. Cust. Appls. 198, in holding that the collector was bound to accept the value found by the *appraiser* or appeal to reappraisement, our appellate court observed:

The appraisement furnished to the collector in the language of the statute the data necessary for the classification of the goods and for the ascertainment of the particular rate of duty applicable to the merchandise. Having failed to appeal to reappraisement the collector should have accepted that appraisement as finally determinative of the classification of the goods * * *.

To the same effect is the holding of our appellate court in *Balfour* v. *United States*, 12 Ct. Cust. Appls. 376, wherein it was held:

The appraiser appraised the actual number of boxes imported at their entered value per box and the collector had no power or authority to change that value and reappraise the merchandise   *   *   *.

In our opinion the trial court fell into error in holding that the report of value made by the examiner to the appraiser was the correct dutiable value, rather than the value actually found by the appraiser, since the trial court held that the proper dutiable "value at the time of exportation was the appraised value." To the extent above indicated the decision of the trial court is modified.

After a careful examination and consideration of the record before us we find as fact:

1. That the merchandise the dutiable value of which is here brought into question consists of 50 iron drums used in the transportation of olive oil.

2. That said drums were entered at a value of £18 18s. 0d., and upon which the examiner reported a value to the appraiser of 21.25 pesetas each, but which were actually appraised by the appraiser as entered.

We hold as a matter of law that the proper dutiable export value of the 50 iron drums in question is the entered and appraised value of £18 18s. 0d. Judgment will be rendered modifying the decision of the trial court accordingly.