UNITED STATES *v.* E. H. BAILEY & Co. (No. 4475)[1]

[1] C. A. D. 291.

United States Court of Customs and Patent Appeals, October 30, 1944

*Paul P. Rao*, Assistant Attorney General (*Joseph F. Donohue* and *Alfred A. Taylor, Jr.*, special attorneys, of counsel), for the United States.

*Jordan & Klingaman* (*Edward F. Jordan* of counsel) for appellee.

[Oral argument October 4, 1944, by Mr. Donohue, and Mr. Edward F. Jordon]

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, JACKSON, and O'CONNELL, Associate Judges

O'CONNELL, Judge, delivered the opinion of the court:

This is an appeal by the United States from a judgment of the United States Customs Court which sustained the importer's protest and directed the Collector of Customs at the port of Philadelphia to reliquidate, in conformity with its decision, two entries covering five invoices of wet steer hides imported from Argentina in July and August, 1936.

The original protest against the assessment, filed on December 11, 1936, claims that the merchandise, under the Tariff Act of 1930, is subject to no higher duties than are levied upon similar merchandise imported from Cuba under the Reciprocal Trade Agreement between the United States and Cuba (T. D. 47232), and is entitled to the

minimum preferential reduction given to Cuba and products imported therefrom.

After an elapse of 5 years, but prior to the calling of the protest for trial, the importer filed a motion to amend its protest by adding the words: "You have assessed duty on too great a weight. You should assess duty only on the quantity landed. Your assessment upon an item of so-called shrinkage is unlawful."

At the trial, which originated in New York, the importer failed to press its original protest, but relied upon the claim set forth in the amendment.

It conceded that the hides were properly assessed at 10 per centum ad valorem under paragraph 1530 (a) of the Tariff Act of 1930, but contended that the assessment was based on an erroneous weight in that it was taken on the invoice weight rather than the landed weight, as shown by the weigher's return.

It moved in evidence the two entries in the transaction, numbered 690 and 956, together with the five consular invoices, each with the summary sheet attached, and the United States weigher's returns, and rested.

Counsel for the Government moved without objection to have the case transferred to Philadelphia, claiming that the papers submitted were ambiguous because the appraiser at that port had drawn a line through the price per unit value upon the respective invoices and inserted another price therein; that while he understood this was not the proper procedure, nevertheless, on the theory that oral evidence is admissible to clarify an ambiguous paper, the appraiser should be allowed to explain his action.

The basis for computing the assessment of duties herein involves the use of two distinct factors, namely, the landed weight and the unit of value. The landed weights of the hides actually imported are to be taken, and the dutiable values determined by multiplying such landed weights by the final appraised values or the entered values, whichever are higher. Tariff Act of 1930, section 503 (a); Downing & Co. v. United States, 11 Ct. Cust. Appls. 310, T. D. 39128.

The record herein discloses that the routine in each transaction was identical, nothing appearing to indicate who placed the figures in red ink upon the papers and the reason therefor.

Entry 690, invoice 3159, is typical of the appraiser's action. Over his rubber-stamped signature upon customs form 6417, "Summary of Entered Value, Examination, and Appraisement," appears this printed form certification:

The examination and appraisement of the merchandise covered by this invoice has been made in accordance with the law, and the facts as found are set forth below.

(A check mark (✓) indicates that appraisement, classification, or quantities are as entered or that packing charges are believed to be correct.)

In the column, "Examiner and date of examination," appears the date "Sep 1—1936;" and the notation "W 2 N" in red ink. In the column, "Appraised," appears a check mark (✓) in red ink. In the column "Advisorily classified," there is also a check mark (✓) in red ink. The columns "Marks," "Quantities," "Dutiable packing charges," and "Remarks" have no checks or notations of any kind.

At the bottom of Form 6417, and beneath the rubber-stamped signature of the appraiser, is this printed form statement:

Abbreviations.—Correct, "C"; advanced, "Adv."; reduced, "Red."; rate advanced, "R. A."; rate reduced, "R. R."; excess quantity, "E"; shortage in quantity, "S"; not legally marked, "N. L. M."; importer's certified value, "I. C. V."; warehouse, "W"; prohibited, "P."

On invoice 3159, in the column typed and printed at the top, "Arg. paper purchase price per unit 100 kls." there appears in typewriting the figure "$70." This has a line in red ink drawn across its center, and written above it in red ink are the figures, "$74.5089."

In the column, "Consular corrections or remarks," is a pencil notation, "Par 1530–a 10%," together with a check mark in red ink.

In the column, "Marks, numbers, and quantities," is a pencil notation, "200518 lbs.," the weight reported by the weigher.

Each of the other three invoices is similar, except that there is a variance in the respective unit values and also the red-ink values written above the invoice figures.

To one invoice, however, the importer attached a slip of paper, reducing the invoice value for entry purposes to make market value. Upon this slip of paper the unit value has been crossed out in red ink and figures appear above it, also written in red ink; nothing appearing thereon to indicate who placed the same there or the reasons therefor. Upon the invoice, nothing appears except the invoice figures relative to the unit value. A separate issue was not raised, however, as to this transaction.

The United States weigher's returns submitted in evidence, customs Form 5985 B, indicate the number of hides imported, the gross weight, the tare outs, and the net quantity or measure of each of the respective entries and invoices under consideration.

Upon the continuance of the trial at Philadelphia, John E. Kilpatrick, deputy collector of the port in charge of liquidation and drawback, was the only witness for the Government. He testified that he had liquidated entry 690, covering invoice 3159, and the two other included invoices, and that he had based his assessment therein upon the net landed weight as indicated on the weigher's return.

The witness further testified that Mr. Gehman, the person who had liquidated entry 956, and the two invoices attached, had died 2 years previously, and that by looking at the official papers submitted, he (the witness) was able to tell exactly what Gehman had done in making his assessment.

The testimony developed that with respect to the two entries covering the five respective invoices, both the deputy collector and Mr. Gehman actually employed the net landed weight, and not the invoice weight, in assessing the duties on the hides in question.

Relative to the notations in red ink, and who placed them upon the invoices and other papers, the method and value used in computing the duties assessed, the arithmetical calculations, and the liquidator's interpretation and use of the "summary sheets," the following testimony was given on cross-examination:

Cross-examination by Mr. KLINGAMAN:

X Q. Mr. Kilpatrick, going back to the first invoice in Entry 690, you stated you used 200,518 pounds as the landed weight for collecting duties?—A. On which one?

X Q. The first one, invoice 3159.—A. On the first invoice 218,720.

X Q. No.—A. You are speaking of the invoice, now your first one.

X Q. The first Entry 690, consular invoice No. 3159.—A. That was on the first entry.

X Q. That was the first one you testified about, I thought.—A. No. 690, that was.

X Q. Yes.—A. Yes, sir; now what did you want to know?

X Q. You stated you used the landed weight 200,518 pounds?—A. That is right.

X Q. What value did you use?

Mr. O'DONNELL. I object to that, that has no relevancy in the case. Their protest, and I will read it; it specifically states:

You have assessed duty on too great a weight. You should assess duty only on the quantity landed. Your assessment upon an item of so-called shrinkage is unlawful.

Mr. KLINGAMAN. I am cross-examining him now. If he used this landed weight and applied appraised value, he could not have come to any such figure. It is a matter of cross-examination.

Mr. O'DONNELL. It goes beyond the scope of the direct examination.

Judge DALLINGER. Only for the purpose of counsel showing the liquidator could not have used the net landed weight he testified he did, all right. Just repeat the question.

Mr. KLINGAMAN. The question was: What unit value did you apply?

The WITNESS. Unit value: Let's see.

Mr. O'DONNELL. If Your Honor please, I have a further objection. I believe the witness can state, he applied that to the appraised value, and that is all.

Judge DALLINGER. Objection overruled.

Mr. O'DONNELL. Exception, please.

The WITNESS. I applied that against the appraised value of $74.5089 Argentine paper pesos per hundred kilos.

By Mr. KLINGAMAN:

X Q. Is that the way the importer entered the merchandise?—A. The importer—

Mr. O'DONNELL. Just a minute. I object. Now we have gone beyond the question of credibility of the witness. He has given the value to which he applied the net landed weight, and I believe that will show his arithmetic was correct. He is talking now about something not inclued in his protest, at this point.

Mr. KLINGAMAN. Our position is this: That if he used the net landed weight

and applied it to the appraised value, he could not have arrived at these figures, so I am trying to find out just how he got there.

Judge DALLINGER. Objection overruled.

Mr. O'DONNELL. Exception, please.

The WITNESS. Can I make the calculation here?

Mr. KLINGAMAN. I have no objection. For the court's understanding, if you apply land weight—I mean—yes, the landed weight, to what he calls the "appraised value" the answer will be the same as if you apply the invoice weight to the invoice value. Now we don't think he has calculated this—We think he erroneously applied one figure, either the landed weight or the value. He has made an error in one of the two, and of course he may not take a value other than the appraised value. Now if by applying the landed weight to the appraised value, you cannot get the answers he has found—

The WITNESS. You do get them.

Mr. KLINGAMAN. The assessment is wrong. I know you think so, but we think you have not. There is no criticism about your honesty or anything like that, but my question was whether the importer had entered at this figure per unit that he used in calculating.

Judge DALLINGER. He may answer. Objection overruled.

Mr. KLINGAMAN. You can say yes or no.

The WITNESS. He entered at $70 Argentine paper dollars per hundred kilos.

By Mr. KLINGAMAN:

X Q. Now didn't the appraiser check that invoice as having approved of the entered value?—A. No; he merely checked it and said it was appraised.

X Q. Your interpretation from his putting the check mark in that column is that he has appraised it; that is all that means, that is as far as you know?—A. That is all that shows on here.

X Q. That is your interpretation of it; all that means the check mark in the column head "Appraised" means that he has acted?

Mr. O'DONNELL. He is referring to the summary sheet now, and I don't believe that is controlling. Isn't that correct?

Mr. KLINGAMAN. I am referring to the summary sheet.

Judge DALLINGER. Objection overruled.

Mr. O'DONNELL. Exception, please.

Judge DALLINGER. Do you understand the question please, whether the check mark put on the summary sheet, means in your interpretation and understanding, means simply that the merchandise is appraised or not appraised at the entered value; is that right?

The WITNESS. In liquidating we consider it appraised, and even though it was marked on there "advanced" it would call our attention to the fact it had been advanced at the time.

Judge DALLINGER. Is there anything on there to show it had been advanced?

The WITNESS. The invoice itself.

By Mr. KLINGAMAN:

X Q. Tell us what it is that you relied on for that purpose. What is there on the invoice to indicate to you the value has been advanced?—A. The fact the unit price is crossed out, and the appraiser's price is put in, in red ink on the invoice.

X Q. That red ink was put on by the appraiser?—A. Yes.

X Q. Not by the collector, anyway?—A. Oh, no.

X Q. He doesn't say anywhere "put in to make market value"?—A. Oh, no.

Mr. O'DONNELL. I am going to make objection.

Judge DALLINGER. Overruled.

By Mr. KLINGAMAN:

X Q. Your answers would be the same with reference to the other invoices, where the value has been changed in red ink without any statement that there is any addition to make market value?—A. That is right.

Mr. O'DONNELL. I make the same objection to all this line of testimony.

Judge DALLINGER. All right. Overruled.

Mr. O'DONNELL. Exception.

X Q. Now will you take the other entry and look at consular invoice 3498? You have the same facts there changed in red ink as to the value?—A. That is right.

X Q. And you calculated under the same theory, you took the red ink figures?—A. Mr. Gehman, the liquidator took it.

X Q. Now take the other invoice on that entry, that is Entry 3415 is the consular invoice number.—A. That is right.

X Q. Is there any indication there the appraiser changed the value?—A. Not on the invoice itself, because in entering the importer did not enter on the invoice price.

X Q. No, he deducted to make market value.—A. He put on a sheet attached to it, and he said "Importer deducts to equal Home Market Value on date of Export of Arg. Paper $67.00 per 100 ks." And when the appraiser appraised that he crossed out the $67.00, and placed in red ink $70.9161.

X Q. On that additional sheet?—A. Therefore he would not put that addition on the invoice, because the invoice is disregarded now.

X Q. So that puts all the invoices in the same situation?—A. Same category.

X Q. Namely the red ink figures were changed you say by the appraiser, not by the collector's office?—A. No, we put in red, no figures on the invoice.

It will be observed from the above statement of counsel for the importer that there is no criticism of the honesty or integrity of the Government's witness. It is claimed he used the wrong unit of value in making his computations, but otherwise in the evidence there is no objection or exception recorded by the importer, either as to the witness or to the testimony which he submitted.

Under section 500, Tariff Act of 1930, it is the duty of the appraiser, under such rules and regulations as the Secretary of the Treasury may prescribe, to appraise imported merchandise. The Customs Regulations of 1931, promulgated by the Secretary of the Treasury as required by section 500, so far as pertinent, read as follows:

Art. 778. Returns by appraiser.—Appraising officers will observe the following rules in making returns on invoices:

(a) The value returned by the appraiser should be in the unit of quantity in which the merchandise is usually bought and sold in the ordinary course of trade, subject to the usual commercial terms and should not be expressed as a total unless the total is the trade unit of value.

\* \* \* \* \* \* \*

(t) When the appraised value of the merchandise exceeds the entered value the method used in determining the value as provided in section 402 of the tariff act of 1930 shall be indicated by the following symbols:

    F. M. V.—Foreign market value.

    Ex. V.—Export value.

    U. S. V.—U. S. value.

    C. P.—Cost of production.

    A. S. P.—American selling price.

(u) The appraiser shall make a return of each invoice on customs Form 6417.

(v) If the appraised value be the same as the entered value, the signature of the appraising officer to the certificate on the summary sheet *without any notations on the invoice* will so indicate. [Italics ours.]

(w) The appraising officer will note only exceptions upon the summary sheet, in the various columns relating to value, rate, quantities, and dutiable packing charges.

(x) *When there are no changes in the entered value, classifications, quantities, etc., and the action of only one examiner is involved, each column should be checked to indicate that proper action has been taken as expressed in the certification of the appraising officer.* [Italics ours.]

(y) When exceptions are noted, the cases returned correct should be marked. "C" (correct) in addition to setting forth the exceptions expressed by the abbreviations set forth in the summary sheet.

The trial court decided that the omission of the appropriate notations, symbols, and abbreviations required to be made upon the official papers by the customs regulations cited above, and the insertion of the check mark (✓) by the appraiser in the "Appraised" and "Advisorily classified" columns of the summary sheet (customs Form 6417) constituted an appraisement of the hides by the appraiser of value as entered by the importer in the respective invoices and in accordance with the classification made.

Reverting to the issue framed by the pleadings, the trial court acknowledged that while the protest claimed that the duty was excessive because it was based upon too great a weight, it developed at the trial that the collector had correctly used the landed weights as his basis of duties, "but instead of using the appraised value he used some other figures he found upon the invoices. * * *. The effect of the collector's action was the same as though he had actually acted as claimed by the plaintiff. In all events, the amount of duties charged was excessive because of an erroneous computation of the collector." Thus, upon the record herein, the court sustained the claim that the collector "in effect" assessed duty upon an item of so-called shrinkage and rendered a judgment directing a reliquidation of the two entries upon the basis of the value derived from a multiplication of the net landed weight by the appraised value, which was the same as the entered value.

The appellant contends that the fundamental error of the court below is revealed by the language of the judgment order which directed that the protest be sustained "in accordance with our decision herein, made a part hereof." Because the relief granted by the language of the decision and directed by the judgment order was not sought in the importer's protest, the basis of the appeal is that such a judgment order is beyond the issue framed by the pleading and is therefore a nullity.

As authority for its decision in rejecting the figures or notations made in red ink by the appraiser in the "Price per unit" column on the respective invoices, the court cited *James Loudon & Co., etc.*

v. *United States*, Reap. Dec. 5731, 9 Cust. Ct. 635, and *Stone & Downer* v. *United States*, Abstract 44001, 5 Cust. Ct. 258, and the appellee herein adds *United States* v. *Cone & Co.*, 10 Ct. Cust. Appls. 120, T. D. 38375.

In the *Loudon* case, *supra*, it was held that a notation made upon an invoice by an examiner who was unauthorized to make an appraisement was invalid. In that case the court stated (page 639):

If it were shown by this record that the red-ink notations on the invoice as to value were placed there by the appraiser then we would be in accord with the holding of the trial court that the statement made on the face of the invoice by the appraising officer controls over the marks on the summary sheet, since there would be a clear conflict between the two, but, as found by the trial court the notations on the invoice were placed there by the examiner. * * *.

In the *Stone & Downer* case, *supra*, where the importer, prior to the trial, amended his protest to raise the question of value, there was a notation stamped in red ink on the consular invoice, "Appraised unit of value is total net invoice value divided by landed weight," which was neither signed nor initialed, and the court held (page 260) that—

* * *. The statement upon the invoice impressed thereon by means of a rubber stamp does not conform with the instructions regulating appraisements as promulgated by the Secretary of the Treasury in the Customs Regulations of 1931, article 778 (a) *supra*, as the appraiser did not have the landed weight before him at the time of appraisement and therefore was unable to ascertain the unit value. * * *.

*United States* v. *Cone & Co.*, *supra*, holds that where the appraiser adopts a purely arbitrary symbol on an invoice, the collector is not authorized to condone the irregularity even though he may have understood the symbol in the sense intended. Referring to the regulation as to the indorsement "Appraiser adds to make market value," this court stated:

* * *. It is doubtless true that a literal adherence to this form is not essential, but on the other hand it can not wholly be ignored by the appraiser. It will certainly be conceded, for example, that it would not be sufficient for the appraiser to make merely an oral report to the collector of his action, nor for him to forward to the collector a notice written as part of any entirely separate instrument. Nor could the appraiser adopt a purely arbitrary symbol, such as a cross or an asterisk. * * *.

In that case the letter D, written upon the invoice by the appraiser, was rejected by the court as an arbitrary symbol without meaning.

The decisions referred to above are to be differentiated from the instant case. Here the definite conclusion to be drawn from the evidence is that the action of the appraiser in crossing out the figures $70 and substituting therefor figures of a higher denomination advanced the entered value of the merchandise, although such a finding is not necessary to our decision for the reasons hereinafter stated.

That such an advance was erroneous or unauthorized cannot be questioned in this case under the importer's protest. This sets forth

distinctly and specifically that the duty was assessed upon too great a weight; that the duty should be assessed only on the landed quantity, and that the assessment upon an item of so-called shrinkage is unlawful.

In its amended form, this protest became the importer's pleading to the same extent for all legal purposes, as if it had actually been a part of the original document. See *United States* v. *Macksoud Importing Co. et al.*, 25 C. C. P. A. (Customs) 44, T. D. 49041; *Lloyd's Subagent* v. *United States*, 19 C. C. P. A. (Customs) 408, T. D. 45576.

. The appellee contends, and the trial court held, that the *amount* of duty assessed was excessive because of an erroneous computation of the collector. But no such claim was made in the protest herein. In this connection, a statement from the opinion in *Lichtenstein* v. *United States*, 1 Ct. Cust. Appls. 79, T. D. 31105, is quoted to the effect that "It is not essential that the importer shall in the protest 'hit the bird in the eye'."

However, a protest is not sufficient under the statute which alleges merely that the amount of duties assessed by the collector is erroneous. Such a blanket form, if sufficient, could be used in every case. In the case of *Lichtenstein* v. *United States, supra,* the essential requirements under the statute (U. S. C. title 19, section 1514), and the attitude of the courts as to vague and general protests are set forth on pages 81 and 82, as follows:

* * *. While a protest should be construed liberally, and while alternative claims are allowed, yet there is the requirement which can not be ignored contained in the words of the section involved that "the importer shall set forth in the protest distinctly and specifically, and in respect to each entry or payment, the reason for his objections thereto." The uncertainty in the present case, if any, arises out of the fact that a blanket form of protest was employed.

*   *   *   *   *   *   *

This protest is misleading rather than informing. This obscurity results from a pernicious method of attempting to throw upon the collector and the courts the burden which properly rests upon the protestant of fairly appraising the collector and the court of *real* claims as distinguished from possible claims, which might be appropriately made with reference to goods not involved in the importation in question.

Whatever may be said in the case before us concerning the action of the collector "in effect," it cannot be doubted that *in fact* he did not assess duty on an item of so-called shrinkage, nor on a weight greater than the landed weight. Really, the basis of the court's decision was that the collector committed another error in computing total dutiable value by use of a unit value greater than that found by the appraiser. The trial court, in its decision, affirmatively so held, and directed the entry of judgment accordingly. Thus it took jurisdiction in this case to pass upon an assumed error of the collector which had not been alleged in the protest by the importer nor defended by the United States.

It is definitely established that such a judgment is a nullity. A

recent expression on the point is found in *United States* v. *William Heyer*, 31 C. C. P. A. (Customs) 111, C. A. D. 259. That case arose by protest which claimed that the liquidation of the entry was void because it was based upon an appraisement which was invalid in that the merchandise had not been inspected by an examiner as required by law. This court affirmed the action of the lower tribunal in sustaining plaintiff's claim.

However, to the judgment order holding that the liquidation was void, the lower court had added that the importer be "allowed to amend his entry." No such claim had been made in the protest, for which reason this court found that the quoted excerpt of the order was surplusage, not responsive to the pleadings and obviously not intended to be binding on customs officials.

The rule that a court may not enter a judgment on a matter not contained within the pleadings applies to all courts, even those of general jurisdiction, and covers instances where the court has the power to make the order in question if it is properly pleaded. See *Windsor* v. *McVeigh*, 93 U. S. 274, 282; *Barnes* v. *Chicago Milwaukee and St. Paul Railway*, 122 U. S. 1, 14; *Reynolds* v. *Stockton*, 140 U. S. 254, 265; *Coe* v. *Armour Fertilizer Works*, 237 U. S. 413, 426.

Since this is true in courts of general jurisdiction, where the right of a litigant to sue is constitutionally safeguarded and the power of the court is inherent, it necessarily applies in the Customs Court where the protestant's sole right to appear is given to him by statute, and the court's power to grant relief is circumscribed by the same authority.

For the reasons stated, the judgment is *reversed*.