## HENRY WEDEMEYER *v.* UNITED STATES

**No. 8051.**—Entered at New York, N. Y.
Entry No. 722446, etc.

Second Division, Appellate Term

(Decided September 18, 1951)

*Frederick E. Klein* (*Frederick E. Klein* and *Harry T. Zucker* of counsel); *Jack L. Rappaport*, associate counsel; for the appellant.

*David N. Edelstein*, Assistant Attorney General (*Daniel I. Auster*, special attorney), for the appellee.

Before LAWRENCE, FORD, and EKWALL, Judges

FORD, Judge: This application for a review of the decision and judgment of the trial court was filed under the provisions of title 28 U. S. C. § 2636 (a). The merchandise involved consists of silver-plated cigarette lighters exported from Mexico and entered at the port of New York. These lighters were entered as invoiced at 3 Mexican pesos each, with certain additions or deductions being made to arrive at what was believed to be the proper value for entry purposes. They were appraised at 6.50 Mexican pesos each, plus 0.88 per centum, plus containers and packing in each case except in reappraisements 165150–A, 165151–A, and 165152–A where the appraisement was at 6.50 Mexican pesos each, plus 3.3 per centum, plus packing and containers, all on the basis of export value.

Before the trial court it was appellant's contention that the entered values correctly represented the proper dutiable values of the merchandise and also that an allowance should be made for certain lighters which were allegedly defective, worthless, or unmerchantable. However, in the argument before this court, counsel for appellant made the following statement:

* * * Now, at this time, for the record, I want to say that the appellant is withdrawing its contentions that the lighters should have been appraised at 3 pesos, and also withdrawing its inquiry for an allowance for the imperfect and defective lighters—I mean the request for same, and we are urging as we did below that the appraised value of these lighters should have been from 5 to 5½ pesos.

The testimonial record before the trial court consisted of 542 type-written pages and 43 exhibits, the latter consisting of 10 lighters, affidavits, and various other documents. In view of the conclusion which we have reached, we do not deem it necessary to indulge in a detailed discussion of all this evidence, although the entire record, including the briefs of counsel and the oral argument before us, has had our careful examination and consideration.

The judgment of the trial court, from which this application for review was filed, decreed:

* * * that the export value, as that value is defined in section 402 (d) of the Tariff Act of 1930, is the proper basis for the determination of the value of the merchandise here involved, and

IT IS FURTHER ORDERED, ADJUDGED, and DECREED that such value was the value found by the appraiser in each case.

As an example of the type of evidence before us in this case, we quote the following, which is marked exhibit 1:

TO WHOM IT MAY CONCERN:

I certify herewith by these presents that the lighters sent by ENCENDE-DORES TROQUELADOS METALICOS, PRODUCTOS CAROPA, on April 17, 1945, namely 500 lighters at the price of $3.00, were identical in every regard to the lighters that have been shipped by us to persons whose names appear in the list from the Invoice stub book (copy book).

The lighters sent to Mr. Henry Wedemeyer by the ENCENDEDORES DE LATON PLATEAODS [sic] were identical in every regard to the lighters manufactured by PADILLA ESCOBAR, CANO Y RODRIGUEZ, CIA. METALICA TROQUELADORA, as I am thoroughly acquainted with the products which they manufactured.

All these lighters were known in Mexico during the period of time indicated in the List as of the WINCHER type and were windproof.

Yours very truly,

Signed: Signature.

ALFONSO MARTINEZ RICO.

The above contains the usual jurat, indicating that it was signed and sworn to before the vice consul of the United States of America in Mexico on the 9th day of December 1947.

Section 402 (c) of the Tariff Act of 1930, as amended by the Customs Administrative Act of 1938, provides that:

* * * The foreign value of imported merchandise shall be the market value or the price at the time of exportation of such merchandise to the United States, at which such or similar merchandise is freely offered for sale for home consumption to all purchasers in the principal markets of the country from which exported, in the usual wholesale quantities and in the ordinary course of trade, including the cost of all containers and coverings of whatever nature, and all other costs, charges, and expenses incident to placing the merchandise in condition, packed ready for shipment to the United States.

Section 402 (d) of the Tariff Act of 1930, defining export value, is practically identical with section 402 (c), as amended, *supra*, except instead of confining the sale "for home consumption" it is confined to sales "for exportation to the United States."

Title 28 U. S. C. § 2633 provides in part as follows:

The value found by the appraiser shall be presumed to be the value of the merchandise. The burden shall rest upon the party who challenges its correctness to prove otherwise.

In *United States* v. *Malhame & Co.*, 19 C. C. P. A. (Customs) 164, T. D. 45276, our appellate court has set out the burden which rests upon an appellant in a reappraisement case, as follows:

The issue is not whether the value returned by the appraiser is the proper dutiable value of the merchandise, but whether there is (a) a foreign value or/and (b) an export value, and, if both, which is the higher, and the importer, having been the appealing party in the first instance, it was incumbent upon it "to meet every material issue involved in the case." *Meadows, Wye & Co.* v. *United States, supra.* * * *

Under the rules stated it was incumbent upon the importer in this case, upon its appeal to reappraisement, to show, as in all judicial proceedings, (a) what the foreign value as defined by paragraph (b), *supra,* was, or that there was no such foreign value; and (b) what the export value, if any, as defined by paragraph (c), *supra,* was.

While it is true that counsel for appellant at the argument before us, abandoned the claim of 3. Mexican pesos per lighter and insisted that the correct value was 5 to 5½ Mexican pesos per lighter, such action on the part of appellant cannot be accepted as a substitute for evidence as to the proper value of these lighters. In support of the contention that 5 to 5½ Mexican pesos per lighter is the correct value, counsel for appellant in the argument before us relies upon certain statements contained in the documentary evidence offered by appellee. While the statements contained in the documentary evidence herein have some evidentiary value, nevertheless, such statements cannot, in our opinion, be accorded sufficient weight to overcome the presumptively correct values found by the appraiser for the involved merchandise.

A careful examination of all the documentary evidence in this record fails to disclose anything which in any way supports the contention of counsel for appellant that the proper export value for the involved merchandise is 5 to 5½ Mexican pesos per lighter. It is the appraiser who found a value for the involved lighters, and it is his act which the statute declares "shall be presumed to be the value of the merchandise." Until the appellant, upon whom rests the burden to prove otherwise, has offered sufficient evidence to establish the incorrectness of the value found by the appraiser and to establish a different value, the value found by the appraiser must stand.

Once the appraiser has found a value for imported merchandise, he may, under proper circumstances, be required to state the basis of his appraisement, whether foreign value, export value, United States value, cost of production, or American selling price, what he found to be the principal market, and what he found to be the usual wholesale quantity. However, aside from the above, the appraiser is not subject to examination as to the reasonable ways and means which he employed in finding a value for such imported merchandise. We, therefore, consider as irrelevant and immaterial much of the evidence in this case, particularly as to the importation of 100 lighters at Omaha, Nebr., and as to the microfilm in evidence herein (exhibit 25). In support of the above holding, the following is quoted from *Muser* v. *Magone,* 155 U. S. 240, 39 L. ed. 135:

* * * The presumption is that a sworn officer, acting in the discharge of his duty, upon a subject over which jurisdiction is given him, has acted rightly, and there is nothing in this record which, in the slightest degree, tends to indicate that the general appraiser did not endeavor by all reasonable ways and means to arrive at the true and actual market value. Among such ways and means are

market price or the quotations for a given day; amounts realized on sales, public and private; and in some instances the cost of production. The course of business at St. Gall in respect of these embroideries was peculiar, and to reach a result, in estimating the value, required the consideration of many elements making up the amount which actually represented the pecuniary basis of transactions. How these various elements impressed the general appraiser, and what grounds influenced or controlled his mental processes, were matters in respect of which he could not be interrogated, since his decision, when approved by the collector, was final, * * *.

The following is quoted from the decision of the trial court:

The examiner testified that in connection with his valuation report to the appraiser he considered information received by him concerning importations of Mexican silver-plated lighters imported at the ports of Chicago, Laredo, Brownsville, and Omaha. He testified that his report of value was influenced particularly by the facts involved in an importation of 100 silver-plated lighters at the port of Omaha, Nebr., which were manufactured by one Cyrnhos, another manufacturer of silver-plated lighters in Mexico (defendant's exhibit 24). The purchase price of such Omaha importation was at a unit price of 6.50 Mexican pesos each, which corresponds to the appraised values herein. He stated that the difference in quantities between the lighters involved in Wedemeyer's purchase and those involved in the Omaha importation did not affect the valuation for customs purposes. The witness stated he rejected the evidence referring to sales and prices of still other manufacturers in Mexico at either 5 or 5.50 Mexican pesos (exhibits 29 and 30) because those prices related to sales in the home market whereas he found a higher export value. The purchase price of 3 Mexican pesos involved in a shipment of lighters imported at Brownsville, Tex. (exhibit 28), was not accepted by him because the buyer there had contracted to purchase the entire output of the manufacturer there involved (R. 422). He also testified that he reported a valuation of 6.50 Mexican pesos as the export value of "such" merchandise, which he found to be higher than the foreign value for "similar" merchandise.

Much of the testimony given by the examiner of merchandise as to what grounds influenced or controlled his mental processes in arriving at the values which he reported to the appraiser was elicited from him by Government counsel and is contrary to the rule announced by the Supreme Court of the United States in *Muser* v. *Magone, supra.*

However, as heretofore stated, much of this testimony is not here material. The reasons why this testimony is not material were succinctly stated by Cole, J., in *Florea & Co., Inc. v. United States*, 21 Cust. Ct. 280, Reap. Dec. 7612, as follows:

The customs examiner, who examined and inspected the importation in question, was called as a witness by plaintiff to testify concerning certain elements essential to a proper appraisement. Such testimony from this customs official has no evidentiary value in this proceeding. The action of a customs examiner is purely advisory; it is in no-way binding upon the appraiser. An examiner's official duty is to make recommendations of dutiable values, but the appraiser is not bound by such recommendations. The examiner does not appraise the merchandise; that is the function of the appraiser. *United States* v. *Eurasia Import Co., Inc.*, 33 C. C. P. A. 123, C. A. D. 326. See also *James Loudon & Co., for Wm.*

*H. Floyd & Co.* v. *United States*, 9 Cust. Ct. 635, Reap. Dec. 5731. · It follows from the cited authorities that whatever attitude the customs examiner had in making his advisory return of the wool knit gloves in question, it has no influence toward a determination of the present issue. The appraiser found the value that plaintiff disputes, and such value carries a statutory presumption of correctness, section 501, *supra*, which cannot be disturbed by testimony of the customs examiner. * * * ·

Based upon a full consideration of the entire record before us, we find as facts:

1. That the imported merchandise consists of silver-plated cigarette lighters imported from Mexico and entered at the port of New York.

2. That the involved merchandise was entered at 3 Mexican pesos each, with certain additions or deductions.

3. That the involved merchandise was appraised at 6.50 Mexican pesos per lighter, plus 0.88 per centum, plus containers and packing in all cases except reappraisements 165150–A, 165151–A, and 165152–A, in which appraisement was made at 6.50 Mexican pesos per lighter, plus 3.3 per centum, plus packing and containers, all on the basis of export value.

4. That the evidence before us fails to establish the incorrectness of the values found by the appraiser and also fails to establish any other value for the involved merchandise.

We therefore conclude as matter of law:

That the proper dutiable export value for the silver-plated cigarette lighters covered by the appeals listed in schedule "A," hereto attached and made a part hereof, is the value found by the appraiser in each case.

The judgment of the trial court is accordingly affirmed. Judgment will be rendered accordingly.