BEFORE THE SECOND DIVISION, OCTOBER 29, 1941

**No. 46513.**—Petition 6125–R of Egry Register Co. (Cleveland).

DALLINGER, Judge: This petition was filed under section 489, Tariff Act of 1930, for remission of additional duties accruing on a certain unfinished printing machine and unfinished miscellaneous parts of printing machines which were

entered at Dayton, Ohio, a subport of the port of Cleveland, at less than the final appraised value thereof.

At the hearing, held at Dayton on April 25, 1941, the entire record in the previously decided reappraisement proceeding involving said merchandise (*Egry Register Co.* v. *United States*, Reap. Dec. 4690, 3 Cust. Ct. 656) was incorporated herein.

In addition to said incorporated record the petitioner offered in evidence the testimony of four witnesses.

The record as a whole establishes that the merchandise in question was entered at $6,000 for the unfinished press and $500 for the miscellaneous parts, making the total entered value $6,500; that subsequently said machine and parts were appraised at $18,437.74 (Canadian currency) and the molders' patterns at $355.69 on the basis of the cost of production; that thereupon the petitioner appealed to reappraisement as a result of which the entered value was sustained by the trial judge on the basis of export value; that on appeal by the Government from said decision, the Third Division of this court, in *United States* v. *Egry Register Co.*, Reap. Dec. 5035, 5 Cust. Ct. 562, held the cost of production to be the proper basis for determining dutiable value, but fixed said value at $10,674.22 (Canadian currency). No appeal from the latter decision was taken by either party, but in lieu thereof the Egry Register Co. filed this petition for remission of additional duties.

It appears from the record that the petitioner herein originally entered into three contracts with the firm of F. M. Scudds, Ltd., of Toronto, Canada, under the terms of which the petitioner was to receive three complete printing presses delivered, set up, and in operative condition at its plant in Dayton, Ohio, with all shipping and transportation charges and all taxes including any and all customs duties fully paid, for the sum of $34,998, or the sum of $11,666 for each printing press so delivered and erected.

It appears further that said F. M. Scudds, Ltd., used a considerable portion of the sums of money sent to it by the petitioner upon other work; that after having sent the said Scudds over $15,000 on account of the three contracts in question, the petitioner had not received a single one of the presses in question, and as matter of fact the said Scudds Co. had only partially completed one press and a few miscellaneous parts of the other two.

In order to make the best of a bad situation, and to salvage whatever was possible, the president of the petitioner-corporation sent Samuel Tourkow, its sales manager, to Toronto with instructions reading in part as follows:

It is our desire to place very clearly and quite definitely before the proper authorities regarding the shipment of a partially constructed printing press which the Scudds Company undertook to build, involving unquestionably a very large amount of unnecessary expense in experimental work both in labor and material.

It would be advisable for you to discuss this with the American Consul in order that he may be acquainted with the facts since the books of the Scudds Company will no doubt show the money which has been expended on these experiments and that our seeking to have the same invoiced at the salvage price is fair and reasonable.

Upon his arrival in Toronto, the said Tourkow went to see the American consul in accordance with his instructions and explained to him the whole situation, asking him how to proceed in clearing the uncompleted press and parts for shipment to Dayton, Ohio. The American consul informed him that the thing to do was "to appraise the actual value of the press." This the said Tourkow undertook to do by calling at the factory of F. M. Scudds, Ltd., where he took the matter up with a Mr. Wright, who was an executive officer and the accountant of F. M. Scudds, Ltd. It was agreed between them that it would take at least from $2,000 to $2,500 to complete the press. As a matter of fact, it subsequently

transpired that it cost the petitioner $4,500, and even then the press was not fit. for efficient operation.

Taking into account the fact that the original contract provided that each of the machines should be delivered at Dayton with all charges and customs duties fully paid, it was agreed that $8,500 for each completed machine would be the contract price in Toronto. Deducting from this amount $2,500 considered at that time necessary to complete the machine, left $6,000 as a fair price for same. Five hundred dollars was then agreed upon as a fair price for the miscellaneous parts. Thus, following the procedure suggested by the United States consul at Toronto, the F. M. Scudds, Ltd., gave a receipted bill of sale or invoice, under date of July 5, 1937, in the sum of $6,500 for the entire importation.

The witness Tourkow arranged for the shipment of the merchandise to Dayton Ohio, the consular invoice being made out in the sum of $6,500. Previous to making entry, the witness took the matter up with Deputy Collector Pitsinger at Dayton, Ohio, and a customs broker in Dayton was employed to make out the entry, which the president of the petitioner-corporation signed.

Subsequently, after appraisement, the witness Tourkow and Mr. Stern, president, and Elmer Rauh, vice president, of the petitioner-corporation, together with Deputy Collector Pitsinger, appeared before Frank R. Thropp, Treasury representative, at which time a full disclosure of the entire transaction, and all of the papers involved therein, was made. This conference was held on October 27, 1937, a little over 2 months after the entry was made. At this conference, Deputy Collector Pitsinger, who appeared herein as the only witness for the Government, stated that he did not recall having had any conversation relative to the value of the merchandise before the filing of the entry. At the hearing in this proceeding the witness Pitsinger reiterated his statement that the witness Tourkow had not visited him before the date of entry. He admitted, however, that he stated to Tourkow over the telephone that he should employ a broker to make out the entry. He further testified that neither the Egry Register Co. nor any of its executive officers had made any attempt to conceal from him any facts in connection with the value of the merchandise involved herein.

In the case of *P. Pastene & Co., Inc.* v. *United States*, 21 C. C. P. A. 69, T. D. 46392, the United States Court of Customs and Patent Appeals said:

The fact that the merchandise was finally appraised at an advance over the entered value is not conclusive of lack of good faith. An importer, after making diligent inquiry concerning the foreign value of imported merchandise, may innocently make an entry of the same at less than its real value. If he is honest and diligent in attempting to determine the correct value for the purpose of making entry, he should not be denied the benefits of said section 489 solely because the value thus found is less than the real value.

In the instant case it is clear that the petitioner herein believed he had a lawful right to enter the merchandise at the invoice value.

Upon the entire record we are satisfied as to the absolute good faith of the petitioner, and that the entry of the merchandise at a less value than that returned upon final appraisement was without any intention to defraud the revenue of the United States or to conceal or misrepresent the facts of the case or to deceive the appraiser as to the value of the merchandise.

The petition is therefore granted.