(C. D. 1609)

HENRY WEDEMEYER *v.* UNITED STATES

United States Customs Court, Third Division

(Decided April 14, 1954)

*Barnes, Richardson & Colburn* (*Joseph Schwartz* of counsel) for the petitioner.
*Warren E. Burger*, Assistant Attorney General (*Daniel I. Auster*, trial attorney), for the respondent.

Before JOHNSON and MOLLISON, Judges

JOHNSON, Judge: These are petitions for remission of additional duties filed under authority of section 489 of the Tariff Act of 1930 (19 U. S. C. § 1489). The merchandise was entered at a value lower than that found upon final appraisement. In fact, the advances were so much higher than the entered value that the appraised value exceeded the value declared on entry by more than 100 per centum, which, under the statute, is presumptive evidence of fraud.

At the trial, it was disclosed that the merchandise at issue consisted of certain silver-plated brass cigarette lighters imported from Mexico. From the evidence, it appears that the petitioner visited Mexico City the latter part of 1944 and inquired into the market value of cigarette lighters. He ascertained that the price for cigarette lighters of the type in question was 2½ pesos each. After returning to the United States, he kept in touch with the market through Irving Leff, his buying agent in Mexico City, as well as the shipper, Padilla Escobar, right up to the time of appraisement in June 1947. Copies of letters substantiating the inquiries made of his agent were admitted in evidence as collective exhibit 1, and a letter received in response to various inquiries was admitted in evidence as exhibit 2.

The lighters in question were exported from February 15, 1945, to June 13, 1945, being entered from February 27, 1945, to June 26, 1945. At the time the entries were made, the petitioner believed that 3 pesos per lighter represented the proper market value for duty purposes. He gave as his reason for such belief that his agent had informed him about December 21 that the price was 3 pesos rather than 2½, and he paid that price for the merchandise. The checks in payment thereof were admitted in evidence. A letter referred to as a contract was also admitted in evidence. What did not appear in this contractual letter, however, was the insistence of the agent that the petitioner deposit with him a substantial sum of money as an inducement to the manufacturer to proceed with the undertaking to deliver 100,000 lighters, and also, as a safeguard, to guarantee that the quantity to be purchased would be increased to 200,000 lighters. However, an agreement was not reached to deposit any given sum of money, but in lieu thereof the petitioner made certain advances toward the next shipment at the time he paid for the shipment received. Such advances were shown in a paper admitted as exhibit 6, which was either the original or a copy of the petitioner's ledger sheet. The order, however, was increased to 200,000 lighters, and the commission from 5 to 10 per centum. These advances, outside of commissions, amounted to approximately $7,500, and certain unsatisfactory merchandise was debited to the agent's account. The petitioner further testified, that after 30,500 lighters had been received, he had encountered such trou-

ble selling same that he terminated his contract. To substantiate the condition of the lighters when received by his clients, letters and telegrams of complaint were admitted in evidence as collective exhibits 7 and 8.

Through his broker, the petitioner filed submission sheets covering the various entries with the appraiser. The first submission sheet was dated February 24, 1945, and covered entry 722446, the first shipment, entered February 27, 1945. This sheet contained a notation also on February 24, 1945, advising to "ascertain from shipper the correct foreign or export value." The petitioner testified in that connection that "The moment I was advised that I had to file a withheld appraisement bond and that the examiner felt that the value in the entries was low, in his estimation, I wrote to Mexico City and asked Mr. Leff to furnish proof to us or to me that 3 pesos was the correct value." However, all the entries were made during the time he was endeavoring to procure advice. In fact, he endeavored to obtain some evidence to sustain his entered value with each of the other shipments, but Mr. Leff insisted that the proper value was 3 Mexican pesos each.

After entry had been made, but before appraisement, the petitioner was visited by the customs agent and turned over to him all of his correspondence, and his books, and anything the customs agent asked for in connection with the transaction, and continued to cooperate with the Government in every way he could. As a matter of fact, the petitioner's agent came to New York and was in contact with the petitioner. According to petitioner's understanding of the conversation, his agent advised him that the cigarette lighters were actually worth 5½ pesos rather than 3 pesos. Accordingly, at the next encounter with the customs agent, the petitioner advised him of his conversation with his agent and of the higher price. The customs agent told him to put it in writing and submit it to the customs authorities, with which suggestion he complied. However, at the same time, he sent a copy of the statement to Mr. Leff in Mexico. Upon receipt of the statement, his agent called him over the phone and denied that he was referring to the lighters in question, which conversation the petitioner quoted as follows:

* * * "Henry, I have just received a copy of the statement which you gave to the customs authorities and whereas in gist everything is correct, I never talked to you about lighters costing 5½ pesos and meaning the lighters which you imported. When I was talking about lighters costing 5½ pesos each I was talking about silver lighters, meaning lighters of the same shape, same type, only, instead of being brass and then silver-plated, having a solid silver case. And whatever information you gave to the customs authorities with reference to 5½ pesos per lighter is absolutely incorrect, because I wasn't talking about lighters of that type."

The broker, filing the entries, testified that the submission sheets were filed prior to entry in accordance with customs regulations. About 2 years after entry, according to the broker, the appraiser wanted the entries amended to equal 6.50 Mexican pesos each, but, as the importer had been unable to ascertain any other price than the 3 pesos, as entered, he believed such to be the proper value. The broker, however, testified that he had recommended that the entries be amended in accordance with the appraiser's suggestion, pointing out that the procedure was to permit one entry to be advanced in value in order to make a test case and amend the remainder of the entries but have appraisement withheld pending the outcome of the test case. The witness stated that later he had several conversations with a Mr. Klein, representing Bernheimer & Zucker, attorney for the importer, telling him the opportunity he had to amend the entries, particularly between March 20 and June 27, 1947. However, he was instructed by Mr. Klein that this proceeding was unnecessary. Therefore, none of the entries was amended, and the appraiser advanced the cigarette lighters covered by each entry.

Harry T. Zucker testified that he is the personal attorney of Mr. Wedemeyer, the petitioner, and when Mr. Wedemeyer released the witness in open court from any privilege that he may be under as to conversations between himself and client, the witness waived the privilege and testified that Mr. Wedemeyer first mentioned the importations to him in the fall of 1945, which was some months before the customs authorities began a full investigation; that he had conferences with Customs Agents Molay and Wyatt; that, in his presence, they had examined the petitioner's bookkeeper, examined the records, etc. The witness testified further that he had given them everything that they called for and also had forwarded certain other papers for their examination in connection with the entries and, besides, had several later meetings with the customs officials in an effort to give them all the information possible. Photostats of a letter to Mr. Eardley, written by the witness, and the reply thereto were admitted in evidence, wherein the witness requested that one of the entries be advanced in value to be used as a test case and that the importer be permitted to amend the remaining entries and have the appraisements thereof withheld pending the final determination of the case. Mr. Eardley assented to such procedure in his reply.

Following such arrangement with customs authorities, the witness went to Europe, and it was not until nearly a year thereafter that he learned that Frederick E. Klein, whom he had retained specially to try the case during his absence, had, without instruction from him, countermanded the agreement to try a test case and withhold appraisement upon the remainder of the entries, and that he had utterly

disregarded instructions of the witness to abide by the arrangements he had made with the customs authorities.

The witness further testified that his advice to Mr. Wedemeyer was to give the Government investigators every facility to assist them in whatever way possible and that it was his duty to do so and that Mr. Molay, the customs agent, had confirmed to him that the petitioner had done so.

Government witness Francis A. Nugent, who was at the time of appraisement the assistant appraiser in the division appraising cigarette lighters, testified that he was familiar with the entire transaction, and that he had received a telephone call the middle part of June 1947 from Mr. Klein, advising him that the entries would not be amended. Consequently, he directed that the appraisement of all the merchandise be made. The witness further testified that, under the regulations, entries may be amended and appraisement withheld pending decision in a test case, if the importer requests it and where he has cooperated with the Government.

There was considerable evidence concerning the advance payments made to the importer's foreign agent, advice to the Office of Price Administration concerning a ceiling price upon the sale of the merchandise in the United States, and a certain tool amortization charge, none of which concerned the dutiable value of the merchandise nor the intent or good faith of the petitioner.

The Government contends that satisfactory evidence was not presented which would warrant an affirmative finding that the entry of the merchandise at less value than that returned upon final appraisement was without any intention to defraud the revenue of the United States or to conceal or misrepresent the facts of the case or to deceive the appraiser as to the value of the merchandise, and cites 24 decisions, as well as the appraisement and review decisions, etc., which uphold its contention. Counsel for the petitioner, on the other hand, contends that the petitioner is entitled to recover for the reason that he has shown his good faith and due diligence in an endeavor to ascertain the proper value, and expresses the opinion that in no remission case, within his experience, have the facts been more favorable to the petitioner. Counsel for the petitioner cites and relies upon the decisions in three petition cases and also the reappraisement and review decisions rendered in connection with these particular entries.

From the decision in *Henry Wedemeyer* v. *United States*, 25 Cust. Ct. 360, Reap. Dec. 7854, it appears that no usual wholesale quantity was established, and the invoice price might have been predicated upon an order sufficiently large to prevent the manufacturer from selling to other buyers. Prices governing sales confined to a single purchaser were held as not acceptable as the proper basis of value.

As there was no proof of sales by the manufacturer in the home market, no foreign value could be established for the cigarette lighters in question.

It also developed that one Crynhos was the manufacturer of 100 lighters sold to a purchaser in the United States, which the appraiser found to be identical with the lighters in question, and the export value of which was used as the basis of value of the lighters in question. These lighters by Crynhos, it appears, were manufactured in the same factory as the lighters in question; and the factory was owned by Crynhos, which he used during the daytime to manufacture lighters. The lighters in question, it appears, were manufactured during the evening with the use of the same dies. A sale of the 100 lighters, according to the Government, had been made in Mexico to one Mexport for 5 pesos each, who, in turn, sold them to an American purchaser in Omaha, Nebr., for 6.50 pesos. This resale transaction was held by the trial court as sufficient for a finding of export value. Having thus found an export value for "such" merchandise, the trial court found it unnecessary to consider evidence of the value of similar lighters, and the value returned by the appraiser was held to be the proper value for the merchandise.

On appeal to a division, *Henry Wedemeyer* v. *United States*, 27 Cust. Ct. 449, Reap. Dec. 8051, it appears that counsel Klein, on behalf of the appellant, abandoned the claim of 3 Mexican pesos per lighter and insisted that the correct value was 5 to 5½ Mexican pesos per lighter. However, the court found the documentary evidence failed to support the contenion of counsel for appellant that such was the proper value. The court also found that the evidence on behalf of the Government as to the proper value of the lighters also was immaterial, particularly concerning the importation of 100 lighters at Omaha. Upon finding that the evidence of value produced by counsel for the importer was insufficient to establish a value for dutiable purposes, and that the evidence of value produced by the Government was entirely immaterial, the court held that the appraiser's finding of value was the proper value, inasmuch as his finding had not been controverted by the importer, and, under the law, if not so overcome by evidence to the contrary, stands as the presumptively correct value of the merchandise.

It is interesting to note in this case that the petitioner testified that all of the entries were allowed to be advanced by the appraiser, rather than following the procedure of the withholding of appraisement except on the test case, for the reason that his counsel, Frederick E. Klein, was sure that a reappraisement appeal would be successful in substantiating the 3-peso price. From all that appears of record, had the petitioner's reappraisement counsel been versed in customs law and procedure, he not only might have been able to present

acceptable evidence of value to substantiate the export value at which the merchandise was entered, but by following the directions of Mr. Zucker and trying the test case only as arranged for, nearly $30,000 in additional duties would have been saved by his client, even though the test case was lost.

The evidence before us also establishes that the cigarette lighters in question were of poor quality and largely defective; that the petitioner had a considerable quantity on his hands which were unsalable; and that upon the canceling of the contract the Mexican agent was in receipt of advance payments which had not been returned or accounted for in cash or delivered goods.

The fact that the petitioner desired to make a test case, and such was allowed by the Government officials, if standing alone, and not supported by the fact that the petitioner honestly believed that the price he paid was the proper value for duty purposes, is not sufficient to show his good faith, discounting, of course, the fact that the agreement was not carried out by reason of the ineptness of his trial counsel. However, here, the submission sheets were filed with the appraiser before entry, and, before the first entry, the appraiser had informed the broker or importer to ascertain from the shipper the correct foreign or export value, and on all subsequent entries withheld appraisement bonds were filed. From the time that the importer was notified as to the value, he endeavored to ascertain the proper price, although without success. In addition to that, he cooperated with the Government in all ways possible in an endeavor to ascertain the proper value, showing his books and all papers pertaining to the importations, and it was admitted without contradiction by certain of the Government officials that the petitioner was cooperative.

It is our opinion that inasmuch as, at the time of entry of some of the merchandise in question, particularly those entries with which withheld appraisement bonds were filed, the attention of the customs officials was drawn to the importer's intention of testing, in a reappraisement action, the correctness of the entered value, it would appear to us that there existed at the time of entry a *bona fide* difference of opinion with respect to the value of the merchandise.

We have examined all of the decisions cited by the Government, but fail to find any of them applicable to the situation here presented. Counsel for the petitioner cited the three following pertinent decisions:

In *Crown Publishers* v. *United States,* 25 Cust. Ct. 159, C. D. 1278, the petitioner made a complete disclosure prior to entry to the customs officials of all material facts bearing on the value of the merchandise. There, it was held that the appraiser's advance was the result of an honest difference of opinion between petitioner and the customs officers. In *Egry Register Co.* v. *United States,* 7 Cust. Ct. 304, Abstract 46513, it appeared that the petitioner believed it had a lawful right to enter the merchandise there at issue at the invoice value. In

holding in favor of the petitioner, the court, in the course of its decision, reiterated the following facts appearing in the case:

Subsequently, after appraisement, the witness Tourkow and Mr. Stern, president, and Elmer Rauh, vice president, of the petitioner-corporation, together with Deputy Collector Pitsinger, appeared before Frank R. Thropp, Treasury representative, at which time a full disclosure of the entire transaction, and all of the papers involved therein, was made. This conference was held on October 27, 1937, a little over 2 months after the entry was made.

It did not appear there that anything was done concerning the value nor was there any conversation relative to the value before the entry was filed. Notwithstanding, the court was satisfied that absolute good faith on behalf of the petitioner had been shown.

In the case of *P. Pastene & Co. (Inc.)* v. *United States*, 21 C. C. P. A. (Customs) 69, T. D. 46392, the appellate court reversed this court and upheld the sufficiency of the petition in establishing good faith. The court stated in part:

In cross-examination of the witness Tosi by counsel for the Government no questions were asked with regard to said testimony, and there is nothing in any testimony or the conduct of said witness appearing in the record to indicate that he was not stating the truth.

* * * In view of the fact that there is nothing in the record to indicate any lack of credibility on the part of appellant's witnesses, and the further fact that appellant's representative Tosi, after being given an opportunity to amend the entry, declined to do so, but appealed to reappraisement, it is our opinion that he was acting in good faith as a prudent man would act in the same circumstances in making the entry involved.

The fact that the merchandise was finally appraised at an advance over the entered value is not conclusive of lack of good faith. An importer, after making diligent inquiry concerning the foreign value of imported merchandise, may innocently make an entry of the same at less than its real value. If he is honest and diligent in attempting to determine the correct value for the purpose of making entry, he should not be denied the benefits of said section 489 solely because the value thus found is less than the real value.

In other cases, applicable to the various phases of the situation here presented, such as the case of *Globe Shipping Co., Inc., a/c Donald A. Holm, Inc.* v. *United States*, Abstract 57220, the court, in granting the petition, stated that:

The record shows that during the time the merchandise was under examination for the purpose of appraisement, petitioner was in communication with the office of the United States appraiser and that petitioner disclosed to the appraiser all the information in its possession regarding the value of this merchandise; that there was a difference of opinion between the purchaser of this merchandise and the appraiser as to the value of this merchandise, the purchaser contending that the merchandise used as a basis of appraisement was a different quality or type from the imported merchandise and for that reason the value placed upon the involved merchandise was too high.

This appears to be one of those cases where the ultimate consignee and the appraiser had an honest difference of opinion as to the correct value of the merchandise, each being convinced that he was right.

The court quoted the testimony of the examiner as follows:

Q.   You believe that was an honest difference of opinion as to the value?—
A.   I believe it is.

     *       *       *       *       *       *       *

Q.   Would you have given permission to amend the entries if you thought the importer had acted in bad faith?

     *       *       *       *       *       *       *

THE WITNESS: No, we would not.

In the case of *Pacific Wax & Trading Company* v. *United States*, Abstract 57530, the court, in granting the petition, stated:

The fact that petitioner desired to make a test case in reappraisement, standing alone, and without amplification, is not probative of good faith or lack of intention to deceive, conceal, or misrepresent the facts of the case.

     *       *       *       *       *       *       *

Inasmuch as, at the time of entry, the attention of customs officials was alerted to importer's intention of testing, in a reappraisement action, the application of American selling prices, it would appear that there existed, at the time of entry, a *bona fide* difference of opinion with respect to the true value of the merchandise, and that the importer was entering at the invoice prices only after calling to the attention of the customs authorities the probability of a basis of appraisement different from that upon which entry was made.

In the circumstances of this particular case, we are of the opinion that the petitioner in undervaluing his goods acted in entire good faith; that there were no facts or circumstances known to the petitioner when he made his entry which would cause a prudent and reasonable person to question the correctness of the value at which he entered; and that he cooperated with the Government in every way in connection with the entries, making a full and candid disclosure of all the material facts in his possession respecting the value of the merchandise. For such reasons, we are satisfied that the entries of the merchandise in question at less value than those returned upon final appraisement were made without any intention to defraud the revenue of the United States or to conceal or misrepresent the facts of the case, or to deceive the appraiser as to the value of the merchandise. The petitions are therefore granted.

Judgment will be entered accordingly.