(C. D. 1728)

Livingston & Co. *v.* United States

United States Customs Court, Second Division

(Decided October 14, 1955)

*Eugene R. Pickrell* (*Richard F. Weeks*) for the petitioner.
*Geo. Stephen Leonard*, Acting Assistant Attorney General (*Dorothy C. Bennett* and *Samuel D. Spector*, trial attorneys), for the respondent.

Before Lawrence, Rao, and Ford, Judges

Rao, Judge: This is a petition for the remission of additional duties assessed for undervaluation upon entry of an importation of silver-plated lighters from Mexico. The merchandise in question was entered at a value of 3 Mexican pesos per lighter, plus containers and packing, and a tax of 3.3 per centum, and was appraised at 6½ Mexican pesos per lighter, plus 3.3 per centum tax, plus case and packing. Upon appeal for reappraisement, the value returned by the appraiser was sustained. *Livingston & Co.* v. *United States*, 32 Cust. Ct. 601, Reap. Dec. 8296.

Section 489 of the Tariff Act of 1930, pursuant to which the additional duties were here assessed and remission is sought, provides, in part, as follows:

If the final appraised value of any article of imported merchandise which is subject to an ad valorem rate of duty or to a duty based upon or regulated in any manner by the value thereof shall exceed the entered value, there shall be levied, collected, and paid, in addition to the duties imposed by law on such merchandise, an additional duty of 1 per centum of the total final appraised value thereof for each 1 per centum that such final appraised value exceeds the value declared in the entry. * * * Such additional duties shall not be construed to be penal and shall not be remitted nor payment thereof in any way avoided, except in the case of a clerical error, upon the order of the Secretary of the Treasury, or in any case upon the finding of the United States Customs Court, upon a petition filed at any time after final appraisement and before the expiration of sixty days after liquidation and supported by satisfactory evidence under such rules as the court may prescribe, that the entry of the merchandise at a less value than that returned upon final appraisement was without any intention to defraud the revenue of the United States or to conceal or misrepresent the facts of the case or to deceive the appraiser as to the value of the merchandise. If the appraised value of any merchandise exceeds the value declared in the entry by more than 100 per centum, such entry shall be presumptively fraudulent, and the collector shall seize the whole case or package containing such merchandise and proceed as in case of forfeiture for violation of the customs laws; and in any legal proceeding other than a criminal prosecution that may result from such seizure, the undervaluation as shown by the appraisal shall be presumptive evidence of fraud, and the burden of proof shall be on the claimant to rebut the same, and forfeiture shall be adjudged unless he rebuts such presumption of fraud by sufficient evidence.

As the final appraised value of the instant importation exceeded the entered value by more than 100 per centum, the entry is, by virtue of the provisions of said section 489, presumptively fraudulent. It is claimed by petitioner, however, that the entry at the lower figure was without intent to defraud the revenues of the United States or to conceal or misrepresent the facts in the case and that, therefore, the instant petition ought to be granted.

To substantiate this contention, petitioner offered the testimony of its sole owner, Bernard Livingston, as well as that of F. W. Seibold, the broker who made the entry of the instant merchandise.

Livingston testified that he made the purchase of the involved lighters from one Irving Leff of Mexico City, and, when the merchandise arrived in this country, he arranged for Seibold to enter it. Some time after entry, he was interviewed at his shop in Washington, D. C., by James L. Hood, a customs agent, and, thereafter, he made a statement before the appraiser at Washington. The statement in question was in evidence as plaintiff's exhibit 1 in the reappraisement case, *Livingston & Co.* v. *United States, supra,* the record in which has been incorporated herein upon motion of petitioner. In this statement, which consists of answers to questions propounded by Customs Agent Hood, Livingston related the circumstances of the purchase and entry of these lighters.

He therein reiterated that he purchased the lighters from Irving Leff and did not know either Ing. Alfredo Pacella Escobar (correct spelling Padilla), listed on the consular invoice as the seller or consignor, or Encendedores Troquelados Metalicos, who issued the commercial invoice. He stated that he received these documents from Irving Leff and turned them over to Seibold, without discussing with him or any-one in his office the value of the lighters in question; and that the price at which the merchandise was invoiced and entered was the amount he had paid for the 1,500 lighters which he received from Leff.

It appears from this statement and from evidence which Livingston gave at the trial that, during the month of May 1945, he was in Mexico on a selling trip. He had with him some articles of jewelry worth $1,800 which he had not sold and did not desire to bring back to the United States. These he tried to sell to Leff who did not wish to pur-chase them but agreed to take them as a deposit for some lighters which he, Leff, offered to sell to Livingston as a really good buy. "You can buy them cheap," was what Leff had said. The terms of purchase, according to Livingston, were 3 Mexican pesos per lighter, plus 15 per centum commission for 10,000 lighters, the $1,800 worth of jewelry being considered as a deposit on the total order. On cross-examination, however, Livingston denied having paid any com-mission on this sale. After consummating the deal, Livingston spoke to some friends in Mexico who advised him that the lighters were worthless and that he should try to cancel his agreement. Leff refused to do so.

After returning to the United States, Livingston decided that, rather than lose the value of the jewelry he had left with Leff, he would order some of the lighters and try to sell them. He requested that 1,000 lighters be sent to him, but received 1,500. The lighters

were most unsatisfactory. They were brassy-looking in appearance and did not work. He was unsuccessful in his efforts to sell them.

Livingston went back to Mexico in August 1945 and again endeavored to cancel the contract he had made with Leff. It was finally agreed that he would pay $900 in addition to the $1,800 worth of jewelry for the 1,500 lighters and release from the contract.

In the statement to which reference has hereinabove been made, Livingston admitted that he had not told Agent Hood, when the latter visited him at his shop, that 10,000 lighters were originally involved in the transaction. He stated:

A. I made a mistake, I didn't think of it.

Q. Doesn't it seem rather odd, Mr. Livingston, that after telling me three or four times on September 28 that you purchased 1,000 lighters but received 1,500, for which you paid a total of $2,700.00, that you now say you didn't think to tell me that you had purchased 10,000?—A. No. I just didn't think of it. I had thought a whole lot about this thing. I had got stuck on it.

Q. Who have you discussed this transaction with since September 28?—A. The only one I have discussed it with is Mr. Seibold. I asked if I had done anything wrong. He didn't think I had. I asked him should I have an attorney come over here, and he didn't see why.

Q. Did you tell Mr. Seibold that you paid $2,700.00 for the lighters?—A. When?

Q. When you talked it over with him?—A. Yes, sure. I paid $2,700, but that hasn't got anything to do with this. I got stuck for the $1,800.00.

Q. But the fact remains that you paid Irving Leff $2,700.00 for 1,500 lighters?—A. Yes. That is what it cost to pay for the lighters and to get out of the contract. That is right. If I have done anything wrong I am willing to pay for it.

About 16 months after appraisement, Livingston wrote to Leff to inquire about the market price of the kind of lighters he had purchased. Leff advised him, by letter, dated September 3, 1946 (petitioner's exhibit 1), that the prevailing price in Mexico, as well as the price for export, was 3 pesos per lighter, and that 2 weeks later the price dropped to 2.40 each, because the end of the war caused many cancellations of orders.

At the time of entry, Livingston did not consider the value of the jewelry as part of the price of the 1,500 lighters. He did not then tell the broker anything about the price, nor about the $1,800 worth of jewelry, because he did not think it was necessary, and because he thought he could liquidate that amount by selling the lighters. He merely gave him the necessary papers. Neither did the broker ever ask him for information as to market value.

Livingston also testified that he did not intend to defraud the revenue of the United States or deceive the appraiser as to the value of the merchandise, or to conceal any of the facts bearing on value. He stated that he made a full disclosure to the customs agent and

that he did not know of a sale of lighters at 6½ pesos each at the time of exportation of the instant merchandise.

F. W. Seibold testified that he acted as customs broker for Livingston & Co. in making the entry at bar, and that, prior to so doing, he asked Livingston if he had any information, forms, or documents that would indicate a higher value than that declared on the consular invoice. He received a negative reply to his questioning and was not then told anything about the $1,800 jewelry deposit. Later, when he did receive this information, he attempted to amend the entry, but was unsuccessful because the importation had already been appraised.

Seibold also stated that he filed a submission sheet, together with the invoice, and was advised that the appraiser had no information as to value. Accordingly, entry was made at the price shown on the consular invoice.

For respondent, James L. Hood testified that he has been a customs agent in the Baltimore district for 18 years and that his duties included investigation of market value, when so requested by customs appraisers. He received a request from the appraiser in Washington (customs Form 6537, respondent's exhibit A) to investigate the instant entry, and, on Friday, September 28, 1945, he called on Mr. Bernard Livingston, at which time he was shown a so-called memorandum receipt for the jewelry (respondent's exhibit B). This, in fact, is an unsigned memorandum on an order blank of Livingston & Co., which recited:

7/10 1945

I. Leff

Mexico DF
Dep on Lights_____$1,800

He was also advised about the $900 check, a photostatic copy of which is in evidence as respondent's exhibit C.

Hood stated that he asked Livingston possibly three or four times how much he had paid for the lighters and, on each occasion, was told "that he had left jewelry valued at $1,800 as part payment and later gave Irving Leff $900 for the balance, making a total that he paid for the lighters $2700." Livingston did not mention to him at that time that he had arranged to purchase 10,000 lighters, or that the jewelry deposit was against the total order, but so advised him by telephone several days later. At Hood's suggestion, Livingston came to the appraiser's office and made the statement, which is plaintiff's exhibit 1 in the incorporated case. It was the opinion of this witness that, between the time of the investigation and the time of the statement, Livingston had changed his story. However, he did admit that all of the foregoing facts were elicited from the importer prior to appraisement.

Bert T. Bayne, appraiser at the port of Washington, D. C., was also called as a witness for respondent. He stated that, at the time of entry, the broker filed a submission sheet (respondent's exhibit E), which was signed by the importer, together with the consular invoice. As the appraiser did not then have any information as to market value of such or similar goods as of August 1945, he submitted a request for information to the Customs Information Exchange in New York. This request, customs Form 6431 (respondent's exhibit F), was returned to him on August 8. Upon its return, he ordered an investigation by a customs agent. Prior to the conference of October 2, 1945, Bayne had no knowledge of any of the circumstances surrounding this importer's purchase of these lighters. He did not know of the deposit of jewelry with the Mexican seller, nor that the merchandise had, in fact, been purchased from Leff & Co., rather than from the firm named as seller on the consular invoice.

In the brief, filed in behalf of petitioner, the fact is emphasized, as significant, that the $1,800 worth of jewelry was "the consideration for Leff letting Livingston out of his undertaking to purchase 10,000 lighters." Whether this is indeed the fair interpretation of the evidence before us, whether the total price for the 1,500 lighters was $900, as contended by petitioner, or $2,700, as Livingston's first conversation with Customs Agent Hood appeared to indicate, is not the main issue here to be determined.

In this, as in all remission cases, the question arises "Has petitioner adduced evidence sufficient to satisfy this court that the entry of its merchandise at a value less than that returned upon final appraisement was made in good faith?" Petitioner had the burden of establishing that it did not intend to undervalue its merchandise and had no reason to believe that the value at which entry was made was not its true value. As stated in the case of *Finsilver, Still & Moss* v. *United States*, 13 Ct. Cust. Appls. 332, T. D. 41250:

* * * In remission cases the importer is not the insurer of the correctness of the value of his goods, neither is he held to the strict rule that he must positively know their value, but he certainly can not be said to be acting in good faith if he declares an incorrect value for his goods, to be acted upon by the appraiser, when, by reasonable inquiry, he could have been advised that his statement was false. And by reasonable inquiry we do not mean that in every instance the importer is required to make inquiries before declaring what he believes to be the value of his goods, but if there is any circumstance which would put a reasonably prudent person, under similar circumstances, upon inquiry, then it is his duty to make such inquiry.

We are of opinion that, under the circumstances of this case, a reasonably prudent person would have been put upon notice that the value at which it was proposed to make entry of the merchandise at bar, might not be correct, and that an investigation or inquiry into the matter of the proper value for the merchandise was dictated.

The importer herein had not previously purchased silver-plated lighters. When Livingston contacted his seller for the purpose of disposing of the jewelry he had taken with him to Mexico, he had no information concerning the market value of this type of merchandise. What he was told by Leff was that he could buy these lighters cheap. Presumably, then, Livingston must have thought that he was getting a bargain when he completed negotiations for the purchase. This, alone, was sufficient to put him on notice that the price which he agreed to pay was less than the fair market value of these goods.

Livingston could not be sure when he issued the order for the shipment of 1,000 lighters to what extent the purchase price reflected the market value of the goods. Neither could he know whether the deposit of the jewelry would ultimately be construed as a part of the purchase price for the lighters he received or as a consideration for his release from the contract he had made with Leff.

Nevertheless, Livingston made no mention of any of these facts when he turned over to his broker the documents pertaining to this shipment. He actually disclaimed any knowledge of the value of this importation other than the price of 3 pesos per lighter which he had agreed to pay. There was even a discrepancy between his testimony at the trial and his statement before the appraiser as to whether a commission had been paid.

Nor did the broker make any independent inquiry as to value, although it appears that a submission sheet was filed, and he was advised that the appraiser had no information as to value. This was a circumstance which under settled law requires the seeking of further information before making entry. *United States* v. *Aug. F. Stauff & Co.*, 25 C. C. P. A. (Customs) 215, T. D. 49306; *United States* v. *H. S. Dorf & Co. of Pa., Inc.*, 36 C. C. P. A. (Customs) 29, C. A. D. 392; *United States* v. *Edward H. Corrigan*, 38 C. C. P. A. (Customs) 26, C. A. D. 434. Instead, and without pursuing the matter further, the broker made entry at the invoice price.

It has been said that "the entrant of merchandise owes a duty to inform himself as to the correctness of his representations as to the value of his merchandise and that a showing of indifference to its proper value does not meet the requirements of satisfactory proof under the statute." *R. W. Gresham* v. *United States*, 27 C. C. P. A. (Customs) 106, C. A. D. 70. The record before us is replete with evidence indicating an indifferent policy on the part of petitioner and its broker, despite the fact that there was much to suggest the questionability of the entered value.

Even though an investigation was conducted by the Customs Agency Service and Livingston was called to the appraiser's office for the purpose of making a statement, the importer made no im-

mediate attempt to seek further information as to value. It was not until over a year after appraisement that the importer contacted his shipper to verify the entered values. This is an indifference to a questionable transaction which falls far short of satisfactory evidence of good faith.

Counsel for petitioner urges that there exists a striking similarity between the facts in the case at bar and those in *Henry Wedemeyer* v. *United States*, 32 Cust. Ct. 250, C. D. 1609, which also involved an importation of silver-plated lighters, imported from Mexico City through the agency of Irving Leff. But the records in the two cases are by no means similar. Whereas Wedemeyer made every effort to ascertain the value of his merchandise, Livingston made none. Before making his purchase in Mexico City, Wedemeyer inquired into the market value of lighters. After making his purchase, he kept in constant touch with both Leff, his buying agent, and Padilla Escobar, the shipper, so as to be advised of changing prices. When the submission sheets, filed by his broker, were returned with the notation "to ascertain from shipper the correct foreign or export value," he immediately wrote for proof that 3 pesos was the correct value and obtained such proof. He also cooperated in every way he could with the customs agent who conducted an investigation of the value of his merchandise. Wedemeyer made no attempt to amend his entries, because the results of his diligent inquiries revealed no other value than the price at which entry had been made.

On the other hand, petitioner herein stands upon a record which not only fails to show any effort to corroborate the entered value, but affirmatively indicates much that was calculated to place it on notice that the entered value might not be the proper value for this merchandise. Assuredly, there is nothing contained therein to suggest, with conviction, a reasonable belief on the part of petitioner that the entered value fairly reflected the market value of these lighters.

We are not satisfied from the evidence before us that the entry herein at a less value than that found upon final appraisement was without intent to defraud the revenues of the United States, or to conceal or misrepresent the facts of the case, or to deceive the appraiser as to the value of the merchandise. The petition for remission of additional duties is, therefore, denied.

Judgment will be entered accordingly.